19 F.3d 1438
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
UNITED STATES of America, Appellee,
v.
Charles T. SMITH, Appellant.
 No. 92-3173.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: March 16, 1994.
Filed: March 29, 1994.
 
 Before BOWMAN, LOKEN, and HANSEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Charles T. Smith appeals his 360-month sentence imposed by the District Court[1] after he pleaded guilty to conspiring to distribute fifty grams of crack cocaine and to transferring and laundering the proceeds, in violation of 21 U.S.C. Secs. 841(a)(1), 846 (1988), and 18 U.S.C. Secs. 2, 1956(a)(1)(A)(i), (a)(1)(B)(i) (1988). We affirm.
 
 
 2
 The presentence report (PSR) indicated a total offense level of 44 and a criminal history category of II. Smith objected to the PSR's drug-quantity determination and its suggested enhancements based on possessing a firearm and being an organizer.
 
 
 3
 At sentencing, Smith's three codefendants testified that they had seen Smith with a gun, and that he had supplied them with crack in amounts totalling more than 1.5 kilograms. Two of the codefendants indicated Smith was the leader of the conspiracy; each named six participants in addition to Smith. Smith testified that he had nothing to do with drug shipments from California to Omaha, the money he wired to California was money he made gambling, and he never had possessed any weapons in Omaha. Smith's counsel argued that the codefendants' testimony was suspect, and that the evidence did not connect Smith's firearm with drug trafficking or show he led the conspiracy.
 
 
 4
 The court determined that Smith had pleaded guilty to conspiracy to distribute crack, he had stated at his plea hearing that he agreed with his codefendants to distribute drugs, and he had admitted to sending money from drug proceeds to California through Western Union. The court rejected Smith's testimony that he won over $100,000 gambling, and concluded that the amount of crack involved was clearly at least 1.5 kilograms. The court further concluded that the evidence showed Smith possessed a firearm. The court determined that the evidence, corroborated by the amount of money Smith was sending to California, showed Smith knew about the amount of crack that was coming in and that he was in charge of the conspiracy in Omaha. The court determined a base offense level of 38, a two-level increase for possessing a firearm, a four-level increase for being an organizer or leader, and a two-level acceptance-of-responsibility reduction, resulting in a total offense level of 42 and a criminal history category of II. The court sentenced Smith to 360 months imprisonment and five years supervised release.
 
 
 5
 On appeal, Smith argues the court erred in overestimating the quantity of crack attributable to him, and in imposing the enhancements for leadership role and possession of a firearm.
 
 
 6
 At sentencing, "[t]he government bears the burden of proving by a preponderance of [reliable] evidence the quantity of drugs involved." United States v. Smiley, 997 F.2d 475, 481 (8th Cir. 1993). We review under the clearly erroneous standard the District Court's drug-quantity determination; in this context, the court's findings as to witness credibility virtually are unreviewable on appeal. United States v. Casas, 999 F.2d 1225, 1230 (8th Cir. 1993), cert. denied, 114 S. Ct. 894 (1994). Here, the court credited the testimony of Smith's codefendants over that of Smith. Given the codefendants' estimates of the amount of crack involved in the conspiracy, and the large amounts of money Smith transferred over Western Union wires, we conclude that the court's finding of at least 1.5 kilograms was not clearly erroneous.
 
 
 7
 To support an enhancement for possession of a firearm, the government must "show that the weapon was present, and ... that it was not clearly improbable that the weapon had a nexus with the criminal activity." United States v. Bost, 968 F.2d 729, 731-32 (8th Cir. 1992). "The mere presence and ready availability of a firearm at a house where drugs are dealt constitutes 'use' of a gun during a narcotics offense." United States v. Clark, 980 F.2d 1143, 1146 (8th Cir. 1992) (per curiam). Here, the testimony of Smith's codefendants established that Smith kept a gun with him at his apartment during the course of the conspiracy. All three codefendants testified to the presence of a gun. Accordingly, the district court's enhancement for possession of a firearm was not clearly erroneous. See United States v. Haren, 952 F.2d 190, 198 (8th Cir. 1991) (standard of review).
 
 
 8
 The Guidelines provide that a defendant's base offense level should be increased by four levels if he was a leader or organizer of a criminal activity involving five or more participants, and by three levels if he was a manager or supervisor. United States Sentencing Commission, Guidelines Manual, Sec. 3B1.1 (Nov. 1993). We have broadly defined the term organizer or leader, see United States v. Manuel, 912 F.2d 204, 207 (8th Cir. 1990), and "[w]e will reverse a determination of a defendant's role in a criminal activity only if it is clearly erroneous," United States v. Willis, 997 F.2d 407, 419 (8th Cir. 1993), cert. denied, 114 S. Ct. 704 (1994) (quoting United States v. Schwarck, 961 F.2d 121, 123 (8th Cir. 1992)). Having reviewed the record, we hold that the court did not err in concluding that Smith was the leader of the Omaha conspiracy.
 
 
 9
 Smith also argues for the first time on appeal that his criminal history score included a prior conviction as to which there was no showing that he was represented by counsel or that he entered a voluntary plea. "This court will not reverse a district court on an issue that is raised for the first time on appeal unless a gross miscarriage of justice would otherwise result." United States v. Filker, 972 F.2d 240, 242 (8th Cir. 1992). Such is not the case here.
 
 
 10
 Accordingly, the judgment is affirmed.
 
 
 
 [1]
 The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska