**UNITED STATES of America, Appellee,**

**v.**

**Darnell BROWNLEE, Appellant.**

**UNITED STATES of America, Appellee,**

**v.**

**Gene R. ROBERTS, Appellant.**

**Nos. 88–2676, 89–2677.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1989.

Decided Nov. 30, 1989.

Michael Dwyer, St. Louis, Mo., for Darnell Brownlee.

Jill I. Pilkenton, St. Louis, Mo., for Gene R. Roberts.

David M. Rosen, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and BOWMAN and MAGILL, Circuit Judges.

BOWMAN, Circuit Judge.

Appellants Darnell Brownlee and Gene R. Roberts, and a third defendant, Clinton Watson, were tried jointly to a jury. Watson, who is not a party to either of these consolidated appeals, was convicted on one count of conspiracy to commit mail fraud, seven counts of mail fraud, and three counts of wire fraud. Brownlee was convicted on four counts: Count I, conspiring to commit mail fraud in violation of 18 U.S.C. § 371 (1982), Counts II and IV, aiding and abetting the commission of mail fraud in violation of 18 U.S.C. §§ 2 & 1341 (1982), and Count XII, aiding and abetting the commission of wire fraud in violation of 18 U.S.C. §§ 2 & 1343 (1982). Roberts was found guilty of one count of conspiring to commit mail fraud, one count of mail fraud, and one count of wire fraud.

Brownlee claims that his convictions on Counts II and IV should be overturned because the conduct charged in these counts is not criminal under the mail fraud statute. He further argues that his convictions on Counts II, IV, and XII should be reversed for insufficiency of the evidence. Roberts contends that he should be granted a new trial because the trial court improperly denied a motion in limine regarding the introduction of evidence of his use of a false address. We affirm the District Court.[1]

## I.

The fraudulent scheme charged in the indictment involved stealing automobiles, titling and insuring them, and collecting on bogus claims filed with the insurers. The charges focused on transactions relating to three separate pairs of automobiles, each pair consisting of one wrecked and one stolen vehicle of same make and model. One set of transactions involved a pair of BMWs; the second two Mazda RX–7s; and the third two Corvettes. In each instance, the conspirators stole one of these luxury cars and then purchased a wrecked car of same make and model. They then trans-

ferred the vehicle identification numbers (VINs) from the wrecked cars to the stolen cars. This enabled the conspirators to title and insure the stolen cars, to use them as collateral for loans, and to collect insurance proceeds on false claims of loss due to theft.

## II.

Brownlee argues that his convictions for aiding and abetting mail fraud on Counts II and IV must be vacated because the instructions to the jury may have allowed it to convict him for conduct not made criminal by 18 U.S.C. § 1341. Specifically, he maintains that the instructions were improper because they did not contain a definition of the term property and did not address the issue of whether the automobile titles fraudulently obtained from the Missouri Department of Revenue were property of that department of state government. Because this issue was not raised at trial, Brownlee has waived his right to raise it on appeal, see Fed.R. Crim.P. 30, and we will reverse only for plain error. *United States v. Gantos*, 817 F.2d 41, 43 (8th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 175, 98 L.Ed.2d 128 (1987). Plain error occurs only when the error is of such fundamental significance that it "affect[ed] the defendant's substantial rights resulting in a miscarriage of justice." *Id.*

The mail fraud statute, 18 U.S.C. § 1341, provides that

> [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting to do so [uses the mails or causes them to be used, shall be guilty of a crime].

The acts of mail fraud charged in Counts II and IV involved use of the mail to obtain titles to the stolen BMW from the Missouri Department of Revenue, in furtherance of

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

the fraudulent scheme charged elsewhere in the indictment and incorporated by reference in these counts. The jury was instructed that, in order to find any of the defendants guilty of any of the charges,

it is necessary that the evidence in the case establish beyond a reasonable doubt that the material was willfully mailed or wired, or caused to be mailed or wired, with the intent to help carry out some essential step in the execution of the scheme to defraud alleged in the indictment.

Instruction 27. The scheme to defraud alleged in the indictment was to steal cars, to title and insure them by devious means, and to collect on the insurance policies by falsely reporting the cars stolen. The victims of this money-driven scheme were the owners of the stolen cars (or their insurers) and the two insurance companies named in the indictment. It is beyond dispute that the scheme operated to deprive all these victims of either "money or property" within the meaning of section 1341. Instruction 27 clearly links Brownlee's conviction on Counts II and IV to the scheme to defraud charged in the indictment, the obtaining of titles to the stolen cars being a vital part of that scheme. The mail fraud offenses in this case, having been perpetrated in furtherance of this scheme to profit in stolen automobiles at the expense of the property rights of the victims of the scheme, are clearly property offenses within the meaning of *McNally v. United States*, 483 U.S. 350, 356, 360, 107 S.Ct. 2875, 2879, 2881, 97 L.Ed.2d 292 (1987) (mail fraud statute does not protect against the deprivation of "the intangible right of the citizenry to good government," but rather is "limited in scope to the protection of property rights"). It therefore was not plain error for the District Court to have failed to give *sua sponte* instructions of the sort Brownlee now argues should have been given. Indeed, we do not think error of any kind occurred.

### III.

Brownlee also argues that the District Court improperly denied his motion for judgment of acquittal because the evidence was insufficient to convict him of aiding and abetting mail and wire fraud as charged in Counts II, IV, and XII. We disagree.

As discussed above, Counts II and IV involved the use of the mail to obtain titles to the stolen BMW from the Missouri Department of Revenue. The first title was mailed to Watson, one of Brownlee's coconspirators, and the second was mailed to the lienholder, Commerce Bank. Count XII involved the wiring of $1,505.00 from Watson to Kim Motors, the auto shop where the wrecked BMW was purchased. The indictment charged that Brownlee aided and abetted Watson in the commission of these acts and that they were perpetrated in furtherance of the scheme to defraud alleged in the indictment.

To prove that Brownlee aided and abetted the commission of the crimes charged, the government had to show that Brownlee (1) associated himself with the unlawful venture; (2) participated in it as something he wished to bring about; and (3) sought by his actions to make it succeed. *United States v. Lanier*, 838 F.2d 281, 284 (8th Cir.1988). Further, "it must be proven that [Brownlee] shared in the criminal intent of the principal." *United States v. Roan Eagle*, 867 F.2d 436, 445 (8th Cir.) (quoting *Johnson v. United States*, 195 F.2d 673, 675 (8th Cir.1952)), *cert. denied*, — U.S. —, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989). In this case, the requisite shared intent is the specific intent to commit the acts of mail and wire fraud charged in Counts II, IV, and XII. "In reviewing the denial of a motion for a judgment of acquittal, we must examine the evidence in a light most favorable to the government, giving it the benefit of all reasonable inferences," and will reverse only if we conclude that a reasonable jury could not have found the defendant guilty beyond a reasonable doubt. *United States v. Davis*, 785 F.2d 610, 619 (8th Cir.1986).

Evidence presented at trial showed that Brownlee's role in the fraudulent scheme charged included stealing at least two of the cars, the BMW and the Corvette. A salesman at Plaza Motors, a BMW dealership, identified Brownlee as the man who in March 1985 came to his showroom, request-

ed a test drive, and stole the BMW at gunpoint. Six days later, Watson purchased a wreck of the same make and model BMW. A portion of the purchase price was wired from Watson's bank to the seller of the wrecked BMW and was the subject of Count XII. The VIN plate from the wrecked BMW was transferred to the stolen BMW and two weeks later Watson applied for, and in due course received by mail, a Missouri title for the stolen BMW. The mailing of this title to Watson was the subject of Count II. Shortly thereafter, Watson pledged the BMW as security for a loan and a new title was obtained from the State of Missouri showing Commerce Bank as lienholder. The mailing of this title to Commerce Bank was the subject of Count IV. Brownlee then insured the stolen BMW with Farmers Insurance Group and obtained a temporary Missouri license tag for the BMW. Immediately thereafter, Brownlee reported the BMW stolen. He filed and collected on the insurance policy. Meanwhile, the BMW was hidden in a garage used by the conspirators in Eagle Park, Illinois.

These facts, taken as a whole, are sufficient to prove beyond a reasonable doubt that Brownlee aided and abetted Watson in obtaining the Missouri titles for the stolen BMW and in purchasing the wrecked BMW. The jury reasonably could infer that Brownlee intended for Watson to purchase a wrecked BMW practically identical to the one Brownlee stole, for this was the second essential step in their scheme to defraud. Similarly, the jury reasonably could find that Brownlee intended Watson to title the BMW, for without a title the vehicle could not have been insured and the fraudulent scheme could not have come to fruition. It is clear that Brownlee both associated himself with and participated in the unlawful venture. By stealing the BMW and later fraudulently collecting on the insurance policy, Brownlee obviously sought to make the total fraudulent scheme successful. We have no difficulty in concluding that a reasonable jury could have found Brownlee guilty of aiding and abetting the commission of the acts of mail and wire fraud charged in Counts II, IV, and XII.

IV.

Roberts's sole claim is that he should be granted a new trial because the trial court erred in denying his motion in limine to exclude evidence of his use of a false address. In reviewing the admissibility of evidence, we apply an abuse of discretion standard. *United States v. Moss*, 544 F.2d 954, 960 (8th Cir.1976), *cert. denied*, 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977).

Before trial, Roberts moved to exclude evidence that he had used a false address in the sales contract for the purchase of a wrecked 1984 Corvette and in the application for an Illinois title to a stolen 1984 Corvette. The false address appeared on the issued Illinois title and was sworn to by Roberts in the presence of a notary public when Roberts transferred title to the Corvette to Watson. Roberts argues that the use of this false address was evidence of other bad acts that should have been excluded under Rule 404(b) of the Federal Rules of Evidence. We disagree.

Evidence showing that Roberts used a false address in the purchase of a wrecked Corvette and later in the titling of a similar stolen Corvette is not evidence of other bad acts. Rather, this evidence is proof of Roberts's commission of the crimes with which he was charged. The VIN plates from the wrecked Corvette that Roberts purchased were transferred to the stolen Corvette. Roberts then registered the stolen Corvette in Illinois using a false address. The purpose of this was to help conceal the fraudulent scheme in which Roberts and his co-conspirators were engaged. This attempt to defeat detection was in furtherance of the overall scheme charged and the trial court did not abuse its discretion in admitting Roberts's use of the false address into evidence.

Finding no reason for reversal, we affirm Brownlee's and Roberts's convictions.